## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

**CHARLIE SINGLETON,**                                          **PETITIONER**

**v.**                                                    **No. 1:11CV247-SA-JMV**

**JIM HOOD, ET AL.**                                        **RESPONDENTS**

### MEMORANDUM OPINION

This matter comes before the court on the *pro se* petition of Charlie Singleton for a writ of *habeas corpus* under 28 U.S.C. § 2254. The State has responded to the petition, and the matter is ripe for resolution. For the reasons set forth below, the instant petition for a writ of *habeas corpus* will be denied.

### Procedural Posture

Charlie Singleton is in the custody of the Mississippi Department of Corrections and is currently housed at the Central Mississippi Correctional Facility in Pearl, Mississippi. He was convicted of sexual battery in the Circuit Court of Lowndes County, Mississippi. SCR, Vol. 1, pg. 58. Singleton was sentenced to serve a term of fifteen years in the custody of the Mississippi Department of Corrections with five years of post-release supervision – and to pay restitution. *Id.* at 85-87. Singleton appealed his conviction and sentence to the Mississippi Supreme Court, which assigned the appeal to the Mississippi Court of Appeals. In his appellate brief, Singleton raised the following grounds for relief, as stated through counsel:

    I.    Whether the evidence was sufficient to support Mr. Singleton's conviction for sexual battery?

    II.    Whether the verdict is against the overwhelming weight of the evidence?

The court of appeals affirmed Singleton's conviction and sentence. *Singleton v. State* 16 So.3d 742

(Miss. Ct. App. 2009), *reh'g. denied* September 1, 2009 (Cause No. 2008-KA-00508-COA).

Singleton did not seek certiorari review in the Mississippi Supreme Court.

Singleton then sought permission from the Mississippi Supreme Court to proceed with a petition for post-conviction collateral relief in the trial court, raising the following grounds for relief, as summarized by the court:

**Ground One.  Ineffective assistance of counsel:**

A.    Trial counsel failed to file motions or lodge objections based on the argument that the indictment did not contain the words "without her consent."

B.    Trial counsel failed to file motions or lodge objections challenging jury instructions S-1 and S-2A.

C.    Trial counsel had a conflict of interest because counsel and Singleton "could not agree on anything."

D.    Trial counsel failed to file motions seeking a continuance in order to have the victim present or to lodge an objection to her absence.

E.    Trial counsel did not raise an objection to Singleton's sentence on the basis that, as a prior felon, he was not eligible for post-release supervision.

F.    Trial counsel failed to raise an objection based on the argument that the trial court failed to advise Singleton of the maximum and minimum sentence he was facing.

G.    Trial counsel failed to file a motion to dismiss the charges for violations of the right to a speedy trial.

H.    Trial counsel was ineffective because he did not represent Singleton on appeal; rather, his appeal was handled by the Indigent Appeals Office.[1]

I.    Trial counsel failed to call Singleton's family and friends to testify as to his good character.

J.    Trial counsel failed to adequately investigate the case.

---

[1]  Singleton raised this allegation of ineffective assistance of trial counsel twice in his state court post-conviction motion.

**Ground Two:** The trial court erred in giving Jury Instructions S-1 and S-2A.

**Ground Three:** The trial court erred in giving Jury Instruction S2-A.

**Ground Four:** The indictment was insufficient because it lacked the words "without her consent."

**Ground Five:** The indictment was insufficient because it lacked the phrase, "Charlie Singleton a male person over the age of eighteen years of age."

**Ground Six:** Singleton's speedy trial rights were violated.

**Ground Seven:** The conviction and sentence were illegal because Singleton was a convicted felon and not eligible for post-release supervision.

**Ground Eight:** Singleton's rights under the Confrontation Clause were violated because the victim was not present at trial.

**Ground Nine:** The evidence was insufficient to support the conviction of sexual battery.

**Ground Ten:** Cumulative error.

The Mississippi Supreme Court denied Singleton's application for permission to proceed, holding, in relevant part:

> The panel finds that Singleton's clam of ineffective assistance of counsel fails to meet the standard set out in *Strickland v. Washington*. The panel further finds that all remaining claims either were raised in previous proceedings or were capable of being raised. Those claims are procedurally barred. Miss. Code Ann. § 99-39-21. Notwithstanding the procedural bar, the panel finds that those claims are without merit.

Exhibit B to the State's Response.

Singleton then filed a successive application post-conviction collateral relief, raising the same grounds for relief as those raised in his first application. On December 15, 2010, the Mississippi Supreme Court dismissed the petition as successive and, alternatively, found the claims to be without merit. Exhibit C to the State's Response.

On November 2, 2011, Singleton filed a petition for writ of *habeas corpus* under 28 U.S.C. § 2254 in this court, raising the same grounds for relief as those raised in his motion for post-conviction

- 3 -

collateral relief, listed above. Singleton has exhausted state court remedies as to the issues raised in the instant petition.

**Evidence Adduced at Trial**

Singleton is the victim's biological father, but he separated from her mother, Bonnie, when the victim was about three years old. SCR, Vol. 3, pg. 188. At that time, Singleton lived in Chicago. *Id.* Bonnie testified that the victim's birthday was August 21, 1986, and that the victim had schizophrenia and was mentally retarded. SCR, Vol. 2, pg. 95. In July of 2002, the victim and Bonnie were in Chicago for a family reunion, and Bonnie agreed to allow Singleton to see the victim. *Id.* at 97. Sometime around September of 2002, Singleton contacted Bonnie and asked if he could move to Mississippi to try to be a father to the victim. *Id.* at 98. Singleton eventually moved in with Bonnie, the victim, and Bonnie's other daughter, Lee, in September of 2002. *Id.* at 99.

At trial, Lee, who is the victim's half-sister, testified that, on September 27, 2003, she, the victim, and Singleton were at the house while her mother was at work. *Id.* at 80. Lee testified that she got up around 9:15 or 9:30 a.m. and went in to her mother and Singleton's room, where she saw the victim laying on a couch with no clothes on from the waist down. *Id.* at 82. She testified that, "[a]t that point Charlie had his face in between her legs[,]" "[o]n her private part." *Id.* Lee testified "[f]rom what I seen – from what I seen as far as I can remember, he had his tongue in between her vagina." *Id.* at 83. Lee then ran upstairs to call her mother at work and informed Bonnie that Singleton was performing oral sex on the victim. *Id.* at 82-83. While Lee was on the phone with her mother, Singleton was on the other extension telling Bonnie that Lee was lying. *Id.* at 83.

After receiving Lee's phone call, Bonnie called 911, got a replacement to fill in for her at work, and went to the house. *Id.* at 101. When she arrived:

[the victim] was hysterical. She was pulling her hair out of her head. She was

> screaming. Lee Ashley was just hysterical. My bedroom was just disarrayed. It was like a mad person had just went through throwed clothes everywhere. The bed was tore up. Clothing was pulled out of the drawer. Everything was just messed up in there.

*Id.* at 101-102. Singleton had left the home in Bonnie's vehicle. *Id.* at 102. The victim was taken to the hospital. *Id.* Bonnie identified Singleton as the perpetrator and testified that the victim was 17 at the time of the crime. *Id.* at 103 and 107.

Carol Gartman, a nurse at Baptist Memorial Hospital, performed a rape kit on the victim. *Id.* at 111. She collected "[f]ingernail scraping, a dried secretion, pubic hair combings, pulled pubic hair, oral swab, vulvar swab, vaginal swab, rectal swab, pulled head hairs, and a blood sample." *Id.* Gartman identified a photograph of the rape kit, which was marked as Exhibit 2. *Id.* at 113-114. Deedra Hughes of the Mississippi Crime Lab, testified that the dried secretions recovered from the victim tested positive for the presence of seminal fluid. *Id.* at 142. The Columbus Police Department requested a DNA examination of the secretions, so they were sent to Orchid Cellmark for further testing. *Id.* at 12-143. Lacy Bowen with Orchid Cellmark testified that she performed DNA tests on the dried secretions and the epithelial fraction of the secretions matched the victim's DNA, while the sperm fraction matched Singleton's DNA.[2] SCR, Vol. 3, pg. 163. Bowen testified that:

> The results of the statistical analysis, the probability of finding a random, unrelated individual with the same profile as the sperm fraction of the dried secretions swab – and we calculate statistics for four main population groups in North America. These are those. For the black population, is it is one in 25.02 quadrillion unrelated individuals.

SCR, Vol. 3, pg. 165.

Eli Perrigin, an officer with the Columbus Police Department., testified that on the day of the sexual battery, Singleton came to the police station. Officer Perrigin stated, "[w]hile I was standing

---

[2] Officer Anita Ray of the Columbus Police Department had obtained a cheek swab of Singleton at the police station. SCR, Vol. 1, pg. 124.

out in the parking lot, Mr. Singleton came around – came out of nowhere, and he walked up to me and said he needed to talk to me, you know, and something about he wanted to press charges against his wife." *Id.* at 174. Perrigin testified that Singleton told him that the victim:

> had approached him on this occasion while he was – he was sitting in his chair at the house, and she came up to him and started biting on him and trying, excuse my language, trying to pull his dick out of his pants. And he said at that time, she kept on biting him. And before he knew it, he said he was going to go ahead and let her do what she wanted to do. And that's when he – he said he didn't stop because he had to get off. That's what he told me.

*Id.* at 175. He also testified Singleton said, "she done this to everyone else on 7th Avenue and something about he might as well go ahead and let her do it since she was a mother f****** slut. Excuse my language." *Id.* Officer Perrigin told Singleton to speak to Corporal Casey Freeman. *Id.* at 176. Officer Anita Ray testified that, when she arrived at the Columbus police station, she observed Singleton speaking with Perrigin. SCR, Vol. 2, pg. 122. In addition, Corporal Casey Freeman testified that Singleton came to the "information and receiving office where I was working that day and said he wanted to make an affidavit out or make – file some charges against his wife." SCR, Vol. 3, pg. 180. Corporal Freeman stated:

> He told me that he and his wife had been separated for about 14 years. And they had just recently gotten back together, and they were living together I believe. And that he was up in his bedroom asleep, and his daughter [the victim] came in, started – told him to – well, had started to, in his words, sucking his dick. And he woke and he told her to stop, and she told him to give her $5 and started to do the same again.

> . . .

> He said that he told her to get – or she told him to give her $5 and started, like I said, started doing it again is what he told me. And he told her to stop again, and she started us [*sic*] cussing him out and told him that was how she got money from several other people around the block.

*Id.* at 181. Corporal Freeman further testified that Singleton said "something that was to the effect, I don't remember exactly the wording of it, but was that a man couldn't do much when a woman did

- 6 -

that to him, and he finished and that it felt good." *Id.* at 182.

Singleton chose to testify. He claimed that he went to sleep and "[w]hen I woke and next thing I know I seen [the victim] had her leg on the couch coming down on my face, you know, with her naked body, and [the victim's sister] was in the door saying I'm going to tell mama; she going to leave you for good." *Id.* at 191. He stated that he then got dressed and went to the police station. *Id.*

## The Doctrine of Procedural Bar

Federal courts have no jurisdiction to review a *habeas corpus* claim "if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision." *Roberts v. Thaler*, 681 F.3d 597, 604 (5th Cir.2012). Thus, a federal court may not consider a *habeas corpus* claim when, " (1) a state court [has] declined to address [those] claims because the prisoner [has] failed to meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds." *Maples v. Thomas*, —— U.S. ——, 132 S.Ct. 912, 922, 181 L.Ed.2d 807 (2012) (alterations in original) (internal quotation marks omitted). This doctrine is known as *procedural bar*. To determine the adequacy of the state procedural bar, this court must examine whether the state's highest court "has strictly or regularly applied it." *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997) (*citing Lott v. Hargett*, 80 F.3d 161, 165 (5th Cir. 1996)). The petitioner, however, "bears the burden of showing that the state did not strictly or regularly follow a procedural bar around the time of his appeal" – and "must demonstrate that the state has failed to apply the procedural bar rule to claims identical or similar to those raised by the petitioner himself." *Id.*

A petitioner may overcome the procedural bar by showing cause for it – and actual prejudice from its application.  To show cause, a petitioner must prove that an external impediment (one that could not be attributed to him) existed to prevent him from raising and discussing the claims as grounds for relief in state court.  *See United States v. Flores*, 981 F.2d 231 (5th Cir. 1993).  To establish prejudice, a petitioner must show that, but for the alleged error, the outcome of the proceeding would have been different.  *Pickney v. Cain*, 337 F.3d 542 (5th Cir. 2003).  Even if a petitioner fails to establish cause for his failure and prejudice from application of the bar, he may still overcome the bar by showing that its application would result in a fundamental miscarriage of justice.  To show that such a miscarriage of justice would occur, a petitioner must prove that, "as a factual matter, that he did not commit the crime of conviction."  *Fairman v. Anderson,* 188 F.3d 635, 644 (5th Cir. 1999) (citing *Ward v. Cain,* 53 F.3d 106, 108 (5th Cir. 1995)).  Further, he must support his allegations with new, reliable evidence – that was not presented at trial – and must show that, "more likely than not that no reasonable juror would have convicted him in light of the new evidence."  *Fairman,* 188 F.3d at 644 (citations omitted).

On post-conviction collateral review, the Mississippi Supreme Court found that Singleton's allegations in Grounds Two, Three, Four, Five, Six, Seven, and Eight were procedurally barred under Miss. Code Ann. § 99-39-21(1).[3]  Section 99-39-21(1) is an independent state procedural bar.  *Stokes*

---

[3]  Section 99-39-21(1) of the Mississippi Code reads:

Failure by a prisoner to raise objection, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver.

*v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997).  The adequacy of the procedural bar applied to Singleton's claims in state court depends on "whether Mississippi has strictly or regularly applied it." *Id*. (*citing Lott v. Hargett*, 80 F.3d 161, 165 (5th Cir. 1996)).  The petitioner, however, "bears the burden of showing that the state did not strictly or regularly follow a procedural bar around the time of his appeal" and must show "that the state has failed to apply the procedural bar rule to claims identical or similar to those raised by the petitioner himself."  *Id*.  Singleton has not shown "inconsistent and irregular" application of the bar, and is thus barred from presenting his state claims in federal court under an independent and adequate state procedural rule.  *Id.* at 861.

In addition, Singleton has not shown that any external impediment prevented him from bringing these claims in state court; likewise, he has not shown that actual prejudice would result from applying the bar.  Further, as discussed below, Singleton's trial counsel and appellate counsel provided effective assistance in defending him; as such, Singleton may not rely on ineffective assistance of counsel to establish cause for his failure to raise these issues in a timely fashion.  In failing to establish these two elements, Singleton has not overcome the state procedural bar, and the court cannot review Grounds Two, Three, Four, Five, Six, Seven, and Eight of the instant petition.

Neither will this court's decision to forego considering Singleton's claims result in a "fundamental miscarriage of justice," as he has failed to show, by clear and convincing evidence not available at trial, that "he did not commit the crime of conviction." *Fairman v. Anderson,* 188 F.3d 635, 644 (5th Cir. 1999) (citing *Ward v. Cain,* 53 F.3d 106, 108 (5th Cir. 1995)).  Indeed, Singleton has presented no such evidence.  As such, his claims in Grounds Two, Three, Four, Five, Six, Seven, and Eight of the instant petition will be dismissed as procedurally barred.

**Grounds One and Nine:  Reviewed on the Merits in State Court**

The Mississippi Supreme Court has already considered Grounds One and Nine on the merits and decided those issues against Singleton; hence, these claims are barred from *habeas* review by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), unless they meet one of its two exceptions:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* (emphasis added).  The first exception, subsection (d)(1), applies to questions of law.  *Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000).  The second exception, subsection (d)(2), applies to questions of fact.  *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997).  Since the petitioner's claims challenge both the application of law and the finding of fact, this court must consider the exceptions in both subsections.

Under subsection (d)(1), a petitioner's claim merits *habeas* review if its prior adjudication "resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law."  *Id.* (emphasis added).  A state court's decision is *contrary to* federal law if it arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of "materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 120

S.Ct. 1495, 1523 (2000). A state court's decision involves an *unreasonable application of federal law* if it identifies the correct governing principle but unreasonably (not just incorrectly) applies that principle to facts of the prisoner's case; this application of law to facts must be *objectively* unreasonable. *Id.* at 1521. As discussed below, the petitioner has not shown that the Mississippi Supreme Court unreasonably applied the law to the facts, or that the court's decision contradicted federal law. Accordingly, the exception in subsection (d)(1) does not apply to Grounds One and Nine of the petitioner's claim.

Nevertheless, under § 2254(d)(2) these grounds may still merit review if the facts to which the supreme court applied the law were determined unreasonably in light of the evidence presented. Because the supreme court is presumed to have determined the facts reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). As discussed below, the petitioner has failed to meet this burden; as such, he cannot use subsection (d)(2) to move these claims beyond § 2254(d), which bars from *habeas corpus* review issues already decided on the merits.

### Ground One: Ineffective Assistance of Counsel

Singleton has raised numerous allegations that trial and appellate counsel provided constitutionally ineffective assistance in defending him against the State's charges. The court must address claims of ineffective assistance of counsel under the two-prong test found in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove that defense counsel was ineffective, the petitioner must show that counsel's performance was deficient and that the deficiency resulted in prejudice to her defense. Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that he was not functioning as the "counsel" guaranteed

by the Sixth Amendment. *Strickland*, 466 U.S. at 687. The court must analyze counsel's actions based upon the circumstances at the time – and must not use the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). To prove prejudice, the petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997).

> **Ground One (A): Trial counsel was ineffective for failing to file motions or lodge objections challenging the indictment for the lack of the words "without her consent."**

In Ground One (A), Singleton argues that his trial attorney should have challenged the indictment charging sexual battery because it did not contain the words "without her consent." As an initial matter, the sufficiency of a state indictment is not a matter for federal *habeas corpus* relief unless it can be shown that the indictment was so defective that the convicting court had no jurisdiction. *Riley v. Cockrell,* 339 F.3d 308, 313-14 (5th Cir. 2003); *Williams v. Collins,* 16 F.3d 626, 637 (5th Cir. 1994) (citing *Yohey v. Collins,* 985 F.2d 222, 229 (5th Cir.1993); *McKay v. Collins,* 12 F.3d 66, 68 (5th Cir. 1994) (*citing Branch v. Estelle,* 631 F.2d 1229 (5th Cir. 1980)). "State law dictates whether a state indictment is sufficient to confer a court with jurisdiction." *Williams,* 16 F.3d at 637. Rule 7.06 of the Uniform Circuit and County Court Rules sets forth the required elements of an indictment under Mississippi law:

> The indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation. Formal and

technical words are not necessary in an indictment, if the offense can be substantially described without them. An indictment shall also include the following:

1. The name of the accused;

2. The date on which the indictment was filed in court;

3. A statement that the prosecution is brought in the name and by the authority of the State of Mississippi

4. The county and judicial district in which the indictment is brought;

5. The date and, if applicable, the time at which the offense was alleged to have been committed. Failure to state the correct date shall not render the indictment insufficient;

6. The signature of the foreman of the grand jury issuing it; and

7. The words "against the peace and dignity of the state."

The court on motion of the defendant may strike from the indictment any surplussage, including unnecessary allegations or aliases.

Singleton was convicted of sexual battery of his daughter under Miss. Code Ann. § 97-3-95(2), which provides:

A person is guilty of sexual battery if he or she engages in sexual penetration with a child under the age of eighteen (18) years if the person is in a position of trust or authority over the child including without limitation the child's teacher, counselor, physician, psychiatrist, psychologist, minister, priest, physical therapist, chiropractor, legal guardian, parent, stepparent, aunt, uncle, scout leader or coach.

Under this statute, lack of consent is not an element of the crime. Singleton was originally indicted for four counts of sexual abuse against his daughter. However, Counts I, II, and III were dismissed because "they are either duplications or merged into Count IV." SCR, Vol. 1, pg. 35. With regard to Count IV, the indictment charged, in pertinent part:

Charlie Singleton late of the County aforesaid, on or about the 27th day of September, 2003, in the County aforesaid, did unlawfully, willfully, and feloniously, engage in sexual penetration with [the victim], a child under the age of eighteen (18) years, her date of birth being August 21, 1986, and while Charlie Singleton occupied the following position of trust or authority over the child: the child's stepfather; in

violation of MCA § 97-3-95; contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the State of Mississippi.

*Id.* at 5. On February 19, 2008, the trial court entered an order amending the indictment to state that Singleton was, in fact, the victim's father, "to reflect the truth of the victim's parentage." *Id.* at 34. Singleton's indictment tracked the language of the statute under which he was convicted. Put simply, Single's claim that the indictment was defective because it did not include the phrase "without her consent" is frivolous – as consent of the victim is not an element of the crime for which he was convicted. Counsel's decision not to raise such a challenge was sound, and attorneys are not required by the Sixth Amendment to file meritless motions. *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir.1995); *Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir.1990). *See Clark v. Collins*, 19 F. 3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering, it is the very opposite.") This claim is wholly without merit and will be dismissed.

> **Ground One (B):** **Trial counsel was ineffective for failing to file motions or lodge objections challenging Jury Instructions S-1 and S-2A.**

Singleton argues that his attorney should have challenged Jury Instructions S-1 and S-2A. He complains that these instructions did not state that the sexual battery was without the victim's consent or contain the victim's date of birth. ECF doc. 4, pg. 30. A challenge to jury instructions will not warrant federal *habeas corpus* relief unless a petitioner establishes that an improper instruction rose to the level of a constitutional due process violation. *Estelle v. McGuire*, 502 U .S. 62, 71-71 (1991).

Jury Instruction S-1 provided:

> The Court instructs the Jury that if you find from the evidence in this case beyond a reasonable doubt that the Defendant, CHARLIE SINGLETON, did on or about September 27, 2003, unlawfully, willfully and feloniously, engage in sexual penetration with [the victim], a child under the age of eighteen (18), and while he was her father, a position of trust and authority over her, then you shall find the Defendant guilty as charged.

SCR, Vol. 1, pg. 43. This instruction tracks the language of Miss. Code Ann. § 97-3-95(2), and,

therefore, is a proper instruction on the applicable law. During the jury instruction conference,

Singleton's trial counsel acknowledged the propriety of the instruction, noting that it, "[t]racks the

statute. Your Honor, no objection." SCR, Vol. 3, pg. 214. Trial counsel wisely chose not to challenge

a proper jury instruction. *See Clark*, 19 F. 3d at 966.

> Jury Instruction 2-A, reads:
>
> The Court instructs the Jury that "sexual penetration" includes cunnilingus, fellatio,
> buggery or pederasty, any penetration of the genital or anal openings of another
> person's body by any part of a person's body, and insertion of any object into the
> genital or anal openings of another person's body. Therefore, if you find from the
> evidence in this case beyond a reasonable doubt that the Defendant licked the private
> parts of [the victim], or that the defendant place his penis into the mouth of [the
> victim], then such acts are "sexual penetration" under the laws of the State of
> Mississippi.

SCR, Vol. 1, pg. 44.[4] The instruction accurately reflects the law and was thus proper. As set forth

above, trial counsel made the sound decision not to raise a meritless objection on this issue. *See*

*Clark*, 19 F. 3d at 966.

As Singleton was charged under Miss. Code Ann. § 97-3-95(2), consent of the victim was not

an element of the crime. In addition, Instruction S-1 clearly informed the jury that, to return a verdict

of guilty, they must find that the victim was under the age of 18 when the crime occurred. There is no

requirement that the jury instructions contain a reference to the victim's birthday. Singleton's attorney

provided effective assistance in deciding not to raise these meritless objections to the instructions. As

such, Singleton has not shown that he was prejudiced by counsel's decision. Hence, the state court's

---

[4] Instruction S-2, which only addressed whether Singleton had "licked the private parts" of
the victim and omitted the language regarding whether he had "place[d] his penis" in her mouth, was
withdrawn in favor of S-2A. SCR, Vol. 1, pg. 46 and Vol. 3, pg. 214. Trial counsel acknowledged, "I
like S-2 better, Your Honor. But I guess I can't object, Your Honor. There's some evidence as to both
of those." SCR, Vol. 3, pg. 214. As the State presented evidence at trial supporting both acts, there
was no valid objection to the instruction. *See Clark,* 19 F. 3d at 966.

finding that this claim failed to satisfy *Strickland, supra,* was neither contrary to, nor did it involve an

unreasonable application of, clearly established federal law, as determined by the Supreme Court of

the United States. Further, the decision was not based on an unreasonable determination of the facts in

light of the evidence presented. For these reasons, Charlie Singleton is not entitled to *habeas corpus*

relief based on his allegations in Ground One (B).

> **Ground One (C):** **Trial counsel had a conflict of interest because he and Singleton "could not agree on anything."**

Singleton also argues that he had a "conflict of interest" with his trial attorney because the two

"could not agree on anything." ECF doc. 4, pg. 30. "[P]rejudice is presumed only if the defendant

demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of

interest adversely affected his lawyer's performance.'" *Smith v. State*, 666 So. 2d 810, 812-13 (Miss.

1995) (citing *Cabello v. State,* 524 So.2d 313, 316 (Miss.1988)). Indeed, "[i]n order to establish a

violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that

an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446

U.S. 335, 348, 100 S. Ct. 1708, 1718, 64 L. Ed. 2d 333 (1980). In this case, Singleton has not

established that there was an actual conflict of interest, only an that Singleton and his attorney had

differences of opinion – an allegation that does not show that counsel had divided loyalties resulting in

an actual conflict of interest. Moreover, Singleton certainly has not demonstrated that he was

prejudiced by any alleged conflict of interest. As such, Singleton has not shown that counsel was

ineffective due to a conflict of interest, and the state court's finding that this claim failed to show

ineffective assistance of counsel was neither contrary to, nor did it involve an unreasonable application

of, clearly established federal law, as determined by the Supreme Court of the United States. Further,

the decision was not based on an unreasonable determination of the facts in light of the evidence. As

such, Singleton is not entitled to *habeas corpus* relief based on the allegation in Ground One (C).

**Ground One (D):** **Trial counsel failed to seek a continuance in order to have the victim present at trial.**

Singleton also alleges that his attorney should have sought a continuance so that the victim could be present at trial. At trial, the victim's mother testified that, prior to the trial, the victim had become unpredictable. SCR, Vol. 2, pg. 96. She testified that, "[the victim] was calm and collect up until 72 hours before this trial," after that, the victim disappeared and the family was unable to find her. *Id.* As a result, the victim was not present at trial.

> In all criminal prosecutions, state as well as federal, the accused has a right, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, 'to be confronted with the witnesses against him.' U.S. Const., Amdt. 6; *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) (applying Sixth Amendment to the States). 'The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact.' *Maryland v. Craig*, 497 U.S. 836, 845, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990).

*Lilly v. Virginia*, 527 U.S. 116, 123-24, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999). However, in this case, the victim did not testify against Singleton.

On the contrary, the victim's sister testified that she witnessed Singleton's sexual battery of the victim. SCR, Vol. 1, pp. 82-83. The victim's mother testified that she was notified of the abuse and called 911. *Id.* at 101. Further, there was testimony that, according to DNA testing, the semen collected from the victim's body in the rape kit belonged to Singleton. SCR, Vol. 3, pg. 164. In addition, no witness testified regarding statements by the victim. As such, Singleton was able to confront all the witnesses against him, and, with regard to the victim, there was no Confrontation Clause violation, as she was not a witness against him. Moreover, there is no indication in the record that anyone knew how to locate the victim at the time of trial, and Singleton has not demonstrated that any continuances would have allowed them to find the victim and bring her to trial. Finally, counsel's

decision not to press for the victim's presence at trial was likely a calculated one.  The victim's mother

testified that the victim was extremely vulnerable – both mentally retarded and schizophrenic – a

combination likely to evoke tremendous sympathy from the jury.  Her absence from trial thus

probably helped Singleton.  For these reasons, trial counsel cannot be considered deficient in choosing

not to seek a continuance to locate the victim.  Further, there is more than a "reasonable argument that

counsel satisfied *Strickland's* deferential standard" under *Harrington, supra*.  As such, the state court's

holding that this claim failed to satisfy *Strickland* was neither contrary to, nor did it involve an

unreasonable application of, clearly established federal law, as determined by the Supreme Court of

the United States.  In addition, the decision was not based on an unreasonable determination of the

facts in light of the evidence.  As such, Singleton is not entitled to *habeas corpus* relief as to the

allegations raised in Ground One (D) of the petition.

**Ground One (E):     Trial counsel was ineffective for failing to lodge an objection to Singleton's sentence of post-release supervision**.

Singleton argues in Ground One (E) that trial counsel should have objected when he was

sentenced to post-release supervision because he was a prior convicted felon.  Singleton argues that, as

a prior convicted felon, he was not eligible for post-release supervision.  He was sentenced to a term

of fifteen years in the custody of the Mississippi Department of Corrections, with five years of post-

release supervision.  *Id.* at 85-87.  To support his position, Singleton relies upon Miss. Code Ann. §

47-7-33, which reads in part:

> such court, in termtime or in vacation, shall have the power, after conviction or a plea
> of guilty, except in a case where a death sentence or life imprisonment is the
> maximum penalty which may be imposed or where the defendant has been convicted
> of a felony on a previous occasion in any court or courts of the United States and of
> any state or territories thereof, to suspend the imposition or execution of sentence, and
> place the defendant on probation as herein provided[.] . . .

Singleton did not, however, receive a suspended sentence; he received post-release supervision, which

is governed by Miss. Code Ann. § 47-7-34.  That statute reads, in relevant part:

> When a court imposes a sentence upon a conviction for any felony committed after June 30, 1995, the court, in addition to any other punishment imposed if the other punishment includes a term of incarceration in a state or local correctional facility, may impose a term of post-release supervision.  However, the total number of years of incarceration plus the total number of years of post-release supervision shall not exceed the maximum sentence authorized to be imposed by law for the felony committed.  The defendant shall be placed under post-release supervision upon release from the term of incarceration.  The period of supervision shall be established by the court.

"Under Mississippi Code Annotated Section 47-7-34(1) convicted felons are eligible to receive post-release supervision."  *Hunt v. State*, 874 So. 2d 448, 451 (Miss. Ct. App. 2004).  Singleton also bases his argument upon *Goss v. State*, 721 So. 2d 144 (Miss. 1998), but that case was overruled by *Johnson v. State*, 925 So.2d 86 (Miss. 2006).  In *Johnson*, the Court held:

> Today, we return the legislatively intended sentencing discretion to our trial courts by clarifying that (1) Miss. Code Ann. Section 47–7–33 prohibits the imposition of a suspended sentence *and* supervised probation on a prior convicted felon; however, this statute does not prohibit the imposition of a suspended sentence, in whole or in part, upon a prior convicted felon, so long as the sentence does not involve a period of supervised probation and does not exceed the maximum penalty statutorily prescribed for the felony offense committed; (2) when a suspended sentence *and* supervised probation are properly imposed upon a first-offender under the provisions of Section 47–7–33, the period of supervision by the Mississippi Department of Corrections is limited to a maximum period of five years; (3) Miss. Code Ann. Section 47–7–34 does not prohibit the imposition of post release supervision upon a prior convicted felon, nor does this statute limit the period of post-release supervision to a period of five years; but instead, the period of post release supervision is limited only to the number of years, which when added to the total period of incarceration, would not exceed the maximum penalty statutorily prescribed for the felony offense committed; and, (4) importantly, the statutory limitation of five years applies only to that maximum period of post-release supervision which may be served under the supervision of the Mississippi Department of Corrections. To the extent that our decision in *Goss v. State,* 721 So.2d 144 (Miss.1998), is in conflict with today's decision, *Goss* is expressly overruled.

*Johnson*, 925 So. 2d at 105.

Singleton's sentence was therefore proper under Mississippi law, and any objections to the sentence on this basis would have been without merit.  As discussed above, the court will not find

counsel deficient because he declined to interpose a meritless objection. *See Clark, supra.* Therefore, the Mississippi Supreme Court's holding was neither contrary to, nor did it involve an unreasonable application of federal law. In addition, the decision was not based on an unreasonable determination of the facts in light of the evidence. Singleton's request for *habeas corpus* relief on this ground must therefore be denied.

**Ground One (F):** **Trial counsel was ineffective for failing to object to the fact that the trial court did not advise the defendant of the minimum and maximum sentence.**

Singleton also argues that counsel was ineffective because he did not object when the court did not advise Singleton of the maximum and minimum possible sentence for sexual battery. Under Mississippi Uniform Circuit and County Court Rule 8.04(A)(4)(b), *when a criminal defendant wishes to **plead guilty***, the trial judge is required to advise him of the potential maximum and minimum sentences. This is consistent with the United States Supreme Court's holding in *Boykin v. Alabama*, 395 US 238, 243-244 (1969), that, prior to entering a plea of guilty, a criminal defendant have "a full understanding of what the plea connotes and of its consequence." Singleton did not, however, plead guilty. Instead, he chose a full jury trial, and there is no requirement that the court advise a criminal defendant of the maximum and minimum sentences when the defendant goes to trial. Hence, any objections to the sentence on this basis would have been meritless, and counsel cannot be considered deficient for choosing not to lodge such an objection. *See Clark, supra.* Thus, Singleton has not met the standard to show ineffective assistance of counsel under *Strickland*. As such, the state court's holding on this ground was neither contrary to, nor did it involve an unreasonable application of clearly established federal law. Further, the decision was not based on an unreasonable determination of the facts in light of the evidence. As such, Singleton's claim for *habeas corpus* relief on this ground will be denied.

**Ground One (G):     Trial counsel was ineffective for failing to file a motion to dismiss the charges due to violations of his right to a speedy trial**.

Singleton complains that he was not brought to trial within 270 days of arraignment as required by Miss. Code Ann. § 99-17-1, which provides, "[u]nless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned." There is also a federal a constitutional right to a speedy trial, which Singleton invoked by reference to the 5th, 6th, and 14th Amendments.  ECF doc. 4, pg. 34.  This constitutional speedy trial right is governed by *Barker v. Wingo,* 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L.Ed.2d 101 (1972).   In that decision, the Supreme Court announced four factors a court must weigh in reaching a speedy trial decision:  (1) length of delay, (2) reason for the delay, (3) the accused's assertion of the speedy trial right, and (4) prejudice to the accused.  These factors must be considered together, and no single factor controls.

An analysis of the *Barker* factors reveals that Singleton is not entitled to *habeas corpus* relief on this ground because the delays prior to his trial are largely attributable to Singleton himself.

**Length of Delay**

This factor serves as a "triggering mechanism." *Id.* at 530.  "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.  Nevertheless, because of the imprecision of the right to speedy trial, the length of delay is necessarily dependent upon the peculiar circumstances of the case." *Id.*  "The relevant period of delay is that following accusation, either arrest or indictment, whichever occurs first." *Robinson v. Whitley*, 2 F.3d 562, 568 (5th Cir. 1993), *citing Dillingham v. United States*, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975).  In the Fifth Circuit, a one-year delay is "presumptively prejudicial." *Id*., citing

*Nelson v. Hargett*, 989 F.2d 847, 851 (5th Cir. 1993). The Mississippi Supreme Court has generally

held that a delay of eight months or longer is "presumptively prejudicial." *See State v. Woodall*, 801

S0.2d 678, 682 (Miss. 2001), *citing Smith v. State*, 550 So.2d 406, 408 (Miss. 1989).

In this case, Singleton was indicted on August 4, 2005. SCR, Vol.1, pg. 5. A warrant was

issued for his arrest that same day. *Id.* at 7. The warrant was reissued on September 26, 2005, and

entered into the National Crime Information Center (NCIC) database on October 3, 2005. *Id.* at 8.

Singleton was arrested on May 30, 2007. *Id.* The record reflects that Singleton had to be extradited

from Tennessee. *Id.* at 16. His trial commenced on February 19, 2008, more than a year after his

indictment; as such, the court must weigh the remaining *Barker* factors. SCR, Vol. 2, pg. 1.

**Reason for delay**

It appears from the record that, at the time Singleton was indicted (August 4, 2005), he was

living in Memphis, Tennessee could not initially be located. On May 31, 2007, Singleton entered a

plea of not guilty, and his trial was set for August 27, 2007. SCR, Vol. 1, pg. 17. On August 27, 2007,

an order of continuance was entered, noting that the defense was conducting an investigation, that the

"defendant was picked up one week before trial," and that trial was set for November 27, 2007. *Id.* at

18. On November 27, 2007, Singleton filed a "Demand for Speedy Trial." *Id.* at 22. That same day,

the trial court entered an order noting that trial was set for November 27, 2007, but another trial went

forward, instead. *Id.* at 23. Therefore, the trial court set the "case for trial on December 3, 2007, in

first place." *Id.* On December 3, 2007, the trial court entered an order resetting the case for

December 5, 2007, because the State was unable to "attain necessary, material witnesses for the trial

of this matter." *Id.* at 24. On December 4, 2007, the trial court reset the trial to February 19, 2008,

because "Defendant's counsel has a bad cold and is hoarse and unable to effectively try the case." *Id.*

at 25. Singleton himself signed that order to indicate that he agreed to the continuance. *Id.* On

December 7, 2007, the trial court entered an order finding:

> The Defendant's indictment was filed in this cause on August 4, 2005, and the capias served May 30, 2007. The Defendant was arraigned on May 31, 2007 and set for trial on August 27, 2007; Defendant's bond was set for $60,000.00 since the Defendant was indicted for four felony offenses. The Defendant's attorney filed a Motion to Reduce Bail on August 29, 2007, and a hearing on this motion was set for September 6, 2007. The Court after hearing testimony, denied the Defendant's motion. On the afternoon of November 27, 2007, while the Court was presiding over a trial of another case, the Defendant's attorney filed a Demand for Speedy Trial. The Court set the Defendant's trial for a first place setting on the very next available trial date of December 3, 2007. However, on the day of trial, Defense Counsel was ill and unable to try the case. Therefore, the Court does hereby set the Defendant's case for a first place trial setting on February 19, 2008.

*Id.* at 26. Singleton's trial began on February 19, 2008.

The court finds that the vast majority of the delay in this case can be attributed to the defense. From August of 2005 to May of 2007, it appears that Singleton could not be located. Once he was arrested, the trial date was promptly set, but was continued at the request of the defense. Then, the trial was continued a short time due to the court's docket. A two-day delay occurred when the prosecution requested that the State be permitted to obtain material witnesses. Then, defense counsel and Singleton himself agreed to continue the case because defense counsel was ill.

**Defendant's Assertion of the Speedy Trial Right**

The third consideration under *Barker* is whether the defendant effectively asserted his right to a speedy trial. As noted above, on November 27, 2007, Singleton filed a "Demand for Speedy Trial." *Id.* at 22.

**Prejudice to the Defendant**

The final factor the court must consider under *Barker* is prejudice to the accused. The interests the speedy trial right protects are: (1) prevention of oppressive pretrial incarceration, (2) an effort to minimize anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532. The "most serious" of these rights is the last, "because the

inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id*. In this case, Singleton has not shown that he suffered any prejudice at all from the delay. Though Singleton was indicted in 2005, he was not arrested and held on bond until May of 2007. As such, he did not suffer oppressive incarceration during that time. The court denied a reduction in bond because Singleton stood accused of four serious felonies, and the majority of the delays thereafter can be attributed to Singleton. For this reason, the court holds that the State minimized the time during which Singleton would experience anxiety and concern. Finally, Singleton has not alleged any facts for the court to conclude that his defense was impaired by the delay.

For these reasons, the court cannot hold that trial counsel was deficient with regard to the speedy trial issue. Counsel made a speedy trial demand, and, as discussed above, Singleton has not proved that his speedy trial rights were violated. Singleton thus suffered no prejudice in this regard. He has thus not satisfied *Strickland's* standard to prove ineffective assistance of counsel. The Mississippi Supreme Court's holding regarding ineffective assistance of counsel was thus neither contrary to, nor did it involve an unreasonable application of federal law. Further, the decision was not based on an unreasonable determination of the facts in light of the evidence. Singleton's claim for *habeas corpus* relief on this ground will therefore be denied.

**Ground One (H): Trial counsel was ineffective for failing to represent Singleton on appeal**.

The court found Singleton to be indigent before trial and appointed Michael Farrow, Esq. as his attorney. SCR, Vol. 1., pg. 14. Following Singleton's conviction and sentence, Farrow filed a "Notice of Appeal" on Singleton's behalf. Exhibit D to the State's Response. Then, Farrow filed a motion to withdraw and to substitute the Office of Indigent Appeals as Singleton's appellate counsel. Exhibit E to the State's Response. On June 18, 2008, the Mississippi Court of Appeals entered an

order allowing Farrow to withdraw and appointing the Office of Indigent Appeals to represent Singleton during his appeal. Exhibit F to the State's Response. On August 5, 2008, Attorney Brenda Jackson Patterson filed an entry of appearance in Singleton's appeal. Exhibit G to the State's Response. Patterson filed Singleton's appellate brief and represented him on appeal. "An indigent defendant has no right to choose his counsel." *Montejo v. Louisiana*, 556 U.S. 778, 784, 129 S. Ct. 2079, 2084, 173 L. Ed. 2d 955 (2009). Singleton was represented by appointed appellate counsel; as such, he has not shown that he was deprived of a constitutional right, and he is not entitled to federal *habeas corpus* relief on this ground. The Mississippi Supreme Court's holding that this claim failed to satisfy *Strickland* was neither contrary to, nor did it involve an unreasonable application of federal law. In addition, the decision was not based on an unreasonable determination of the facts in light of the evidence. As such, Singleton's allegations in Ground One (H) of the petition will be denied.

**Ground One (I):** **Trial counsel failed to call Singleton's friends and family to testify regarding his character.**

Though Singleton raises the bare allegation that counsel failed to call character witnesses, he has not identified which witnesses he wished to call – or what their testimony might have been, if called. These bare allegations are insufficient to sustain a request for *habeas corpus* relief for ineffective assistance of counsel:

> [C]onclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding. *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983). "In the absence of a specific showing of how these alleged errors and omissions were constitutionally deficient, and how they prejudiced his right to a fair trial we [can find] no merit to these [claims]." *Barnard v. Collins*, 958 F.2d 634, 642 (5th Cir. 1992).

*Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000). Singleton's conclusory allegation regarding uncalled witnesses is thus not a valid *habeas corpus* claim.

Singleton's counsel did a commendable job in representing him at trial, despite overwhelming evidence of his guilt, including Singleton's own highly incriminating statements to law enforcement officers. Clearly there is more than a "reasonable argument that counsel satisfied *Strickland's* deferential standard" under *Harrington, supra*. For this reason, the Mississippi Supreme Court's rejection of this claim of ineffective assistance of counsel was neither contrary to, nor did it involve an unreasonable application of federal law. Neither was the decision based upon an unreasonable determination of the facts in light of the evidence. Singleton's request for *habeas corpus* relief on this ground will, therefore, be denied.

**Ground One (J):        Trial counsel failed to adequately investigate the case.**

In this ground, Singleton alleges that counsel failed to conduct an adequate investigation; however, he does not specify what further investigation counsel should have conducted – or how such investigation would have benefitted Singleton's defense. Such "conclusory allegations do not raise a constitutional issue in a *habeas* proceeding." *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983). As such, the Mississippi Supreme Court's holding that this allegation failed to establish a claim of ineffective assistance of counsel was neither contrary to, nor did it involve an unreasonable application of federal law. In addition, the decision was not based on an unreasonable determination of the facts in light of the evidence. Singleton's claim for *habeas corpus* relief on this ground will, therefore, be denied.

**Ground Nine:  The Evidence Was Insufficient to Support
the Conviction for Sexual Battery**.

In Ground Nine, Singleton argues that the evidence was insufficient to sustain his conviction for sexual battery because the State failed to show that the victim did not give her consent. ECF doc. 3, pg. 3. As set forth above, however, lack of consent is not an element of the crime of sexual battery

- 26 -

for which Singleton was convicted.  Further, Singleton did not raise this issue on direct appeal; as

such, the issue was procedurally barred on post-conviction collateral review, as discussed above.  On

direct appeal, Singleton did, however, challenge the sufficiency of the evidence – on the basis that the

State put on inadequate evidence of penetration.  The court has liberally construed Singleton's *pro se*

petition, as a challenge to the evidence regarding proof of penetration.  The Mississippi Court of

Appeals held:

> Singleton was charged with sexual battery pursuant to section 97–3–95(2), which
> states:
>
>> A person is guilty of sexual battery if he or she engages in sexual penetration
>> with a child under the age of eighteen (18) years if the person is in a position
>> of trust or authority over the child including without limitation the child's
>> teacher, counselor, physician, psychiatrist, psychologist, minister, priest,
>> physical therapist, chiropractor, legal guardian, parent, stepparent, aunt, uncle,
>> scout leader or coach.
>
> It is undisputed that Kelly[5] was seventeen years old and that Singleton is Kelly's
> father.  Thus, the element at issue here is penetration.  For the purposes of section
> 97–3–95(2), "'[s]exual penetration' includes cunnilingus, fellatio, buggery or
> pederasty, any penetration of the genital or anal openings of another person's body by
> any part of a person's body, and insertion of any object into the genital or anal
> openings of another person's body."  Miss. Code Ann. § 97–3–97(a) (Rev.2006).
> Singleton argues that the only evidence of penetration is Lauren's statement that
> Singleton "had his tongue in between her vagina."  Further, he claims that her
> testimony is unreliable because her statement to the police merely stated that
> Singleton's head was between Kelly's legs.  However, the reliability of Lauren's
> testimony is not an issue for this Court to decide.  It is the jury's responsibility to
> evaluate the credibility of a witness. *Smith v. State,* 821 So.2d 908, 910(¶ 4)
> (Miss.Ct.App. 2002) (citation omitted).  "The jury has the duty to determine the
> impeachment value of inconsistencies or contradictions as well as testimonial defects
> of perception, memory, and sincerity." *Id.* (quoting *Ford v. State,* 737 So.2d 424,
> 425(¶ 8) (Miss.Ct.App.1999)).  Lauren's testimony clearly proved penetration; it was
> the jury's decision to take this testimony as truth.  In addition, there is the testimony of
> Detective Perrigin and Freeman.  Singleton told both police officers about instances
> where Kelly performed oral sex on him.  Those instances alone would constitute

---

[5]  In the appellate opinion, the Mississippi Court of Appeals used a pseudonym for both the
victim and the victim's sister.  The victim was referred to as "Kelly" while the sister was called as
"Lauren."

sexual battery. Viewing all of the evidence in a light most favorable to the State's case, we find that a rational jury could find, beyond a reasonable doubt, that penetration occurred. Accordingly, this issue has no merit.

*Singleton v. State*, 16 So. 3d 742, 745 (Miss. Ct. App. 2009). As these facts show, the Mississippi Court of Appeals' decision was amply supported in the record. As such, state court's decision that this ground for relief was without merit was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Further, the decision was not based on an unreasonable determination of the facts in light of the evidence presented. As such, Singleton's request for *habeas corpus* relief on this ground will be denied.

### Ground Ten:  Cumulative error.

Finally, Singleton argues that he is entitled to federal *habeas corpus* relief based upon cumulative error. Cumulative error has can be an independent basis for *habeas corpus* relief, but only when "(1) the individual errors involved matters of constitutional dimensions rather than mere violations of state law; (2) the errors were not procedurally defaulted for *habeas* purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'" *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996) (*citing Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992)). Meritless claims or claims that are not prejudicial cannot be aggregated, no matter the number raised. *Derden*, 978 F.2d at 1461. As discussed above, none of Singleton's claims has merit; as such, he has not proved a claim of cumulative error. There are no errors, capable of review, which have aggregated to cast doubt upon whether the verdict satisfied due process. The Mississippi Supreme Court's decision to deny certiorari review on this issue was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Further, the decision was not based on an unreasonable determination of the facts in

light of the evidence presented.  For these reasons, Singleton's request for *habeas corpus* relief in Ground Ten of the petition will be denied.

## Conclusion

In sum, none of Singleton's claims for *habeas corpus* relief has merit, and the instant petition for a writ of *habeas corpus* will be denied.  A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 9th day of July, 2015.

 /s/ Sharion Aycock_____
**U.S. DISTRICT JUDGE**